R. J. BROWN ET AL. v. JENNIE B. IKARD ET AL.

Decided December 5, 1903.

**1.—Injunction—Restraining Execution Sale—Equitable Title.**

A bank, having a judgment against W. I., levied an execution on land of which he was in possession, the equitable ownership of which, by virtue of a parol trust, was in his children, for whom he held in trust, while the legal record title was in M. I., who held it in trust for the children. Held, that the children were not entitled to an injunction to restrain the sale, as it would not have affected their equitable title or cast a cloud upon it, and an action of trespass to try title would afford them adequate relief.

**2.—Same—Enforcing Equitable Right.**

The case was not one requiring the aid of an injunction to enforce the equitable rights of the children, since neither of the parties holding in trust for them denied their rights in any degree whatever.

Appeal from the District Court of Clay. Tried below before Hon. A. H. Carrigan.

*W. T. Allen* and *Denny & Taylor,* for appellants.

*Matlock, Miller & Dycus,* for appellees.

STEPHENS, ASSOCIATE JUSTICE.—The City National Bank of Dallas, Texas, recovered a judgment against W. B. Curtis, T. J. Atkinson, W. S. Ikard and E. F. Ikard in March, 1888, for a large sum of money, which was revived in October, 1896. Execution issued upon this judgment was levied January 29, 1903, on the lands in controversy as the property of W. S. Ikard. Willie S. Garrow (joined by her husband) and Jennie B. Ikard, children of W. S. Ikard, obtained an injunction restraining the sale of said lands, which was made perpetual on final hearing, and from that judgment this appeal was taken.

At the date of the levy, as well as at the institution of this suit, the legal title to these lands stood in the name of M. F. Ikard, to whom they had been conveyed by quitclaim deed in November, 1898, by D. C. Patton, who had nominally purchased them at execution sale made in March, 1897, under a small judgment against M. Ikard, to whom the Texas & Pacific Railway Company had conveyed them in the year 1888. Ever since the date of this conveyance from the railway company to M. Ikard, W. S. Ikard, who had become insolvent the preceding year, has been in the actual possession of the lands, claiming the same for his said children, who, until recently, were minors, and using the same as a ranch for a valuable herd of cattle also claimed for them in lieu of cattle which he had given them and sold with his own herd at a time when he was not only solvent but rich.

This suit was brought by the appellees as the equitable owners of the lands against the sheriff making the levy and the plaintiffs in execution, assignees of the Dallas bank; alleging that the lands had been originally purchased for them and paid for with money derived from the sale of cattle belonging to them; that M. Ikard, D. C. Patton and

M. F. Ikard had each in succession held the lands in trust for them; that their father, W. S. Ikard, ever since the purchase in 1888, had been in possession as their agent and manager; that their title rested in parol; and consequently that a sale of the lands as the property of W. S. Ikard would cast a cloud on it.

The first question raised in the trial court and in this court is, were appellees entitled on the facts stated to injunction? We are of opinion that they were not. It seems clear from the decisions of our Supreme Court that if the legal title had been in them, no cloud would have been cast on it by the threatened sale, and consequently that they would not have been entitled to injunction. For a collation of the authorities see the opinion of Chief Justice Fisher in Chamberlain v. Baker, 28 Texas Civ. App., 499, 4 Texas Ct. Rep., 339. We have only to determine, then, whether the fact of their title being equitable warranted the relief sought. Undoubtedly the jurisdiction of a court of equity to protect purely equitable estates or interests is firmly established, and such jurisdiction does not depend upon the inadequacy of legal remedies. 3 Pom. Eq. Jur., sec. 1339. But in such cases, as well as where the title is legal, some necessity for the extraordinary remedy by injunction must be shown before a court of equity will grant it.

Mr. Pomeroy, in the section above cited from his excellent work on Equity, in discussing this ground of equity jurisdiction, uses the following language: "It may, therefore, be stated as a general proposition, that whenever the equitable relief against mistake, or fraud with respect to specific property, or the equitable remedy of enforcing trusts or fiduciary duties, concerning specific property, or of enforcing any other equitable estates, interests or claims in or to specific property, *requires the aid of an injunction,* a court of equity has jurisdiction, and will exercise that jurisdiction, to grant an injunction, either pending the suit or as a part of the final decree, to restrain a breach of trust or of fiduciary duty, or to restrain an alienation, transfer, assignment, incumbrance, or other kind of dealing with the property, which would be in violation of the trust or fiduciary duty, or in fraud of complainant's rights, and which would, therefore, interfere with and prejudice the ultimate remedies to which he may be entitled with respect to such property." The author places in italics the clause, "requires the aid of an injunction," thus emphasizing as the test of jurisdiction to grant injunction as a means of enforcing trusts or other purely equitable estates, interests or claims the *necessity* for such relief.

Was there any such necessity in the case before us? We think not. M. F. Ikard, who held the legal title in trust for appellees, so far from disputing their claim, had at all times admitted it, and doubtless would have conveyed the lands to them at any time on request. The attitude of M. Ikard, D. C. Patton and W. S. Ikard towards them was, and had even been, the same as that of M. F. Ikard. Nothing in violation of the trust was threatened by any of them. In no proper sense, then,

could this suit be regarded as one to enforce a trust or other equitable estate, interest or claim in or to specific property. There was no more necessity to restrain the threatened sale with the legal title standing in M. F. Ikard than there would have been if he had already conveyed the lands to appellees. In other words, the fact that their title was purely equitable placed them in no worse position so far as the threatened sale was concerned than if it had been legal, the execution being against W. S. Ikard, who was an entire stranger to the paper title. Nor did the fact that appellees had to resort to parol testimony to show their title to the lands affect the question. As before seen, they could have had the legal title in themselves for the asking, and are not entitled to equitable relief on any such ground. It is only where a threatened sale would cast a cloud on a title but for parol proof that an injunction will be granted to prevent it.

As a further ground for equitable relief, after pleading title in themselves by limitation founded upon the possession of W. S. Ikard as their agent, appellees alleged that if this possession had been adverse to them it would have been sufficient to invest W. S. Ikard with title by limitation; but this, if important, was contradicted by the petition itself in stating the ages of the appellees, who were shown to have been under the disability of minority until less than four years before the institution of this suit. The threatened execution sale therefore could hardly have cast much of a cloud even on their title by prescription, and the remedy of trespass to try title against the purchaser at such sale would seem to be adequate.

On the whole, we conclude that the case made did not call for the extraordinary relief by injunction to prevent a sale which could neither cloud appellees' title nor disturb their possession. The judgment is therefore reversed and the suit dismissed.

*Reversed and dismissed.*

Writ of error refused.